Our next case this morning is Whirlpool Corporation v. Wells Fargo Bank. We will now look at the case of Whirlpool Corporation v. Wells Fargo Bank. Good morning, Your Honors. May it please the Court, Attorney Ann Smith on behalf of the appellant Whirlpool Corporation. This appeal arises from an adversary proceeding in a bankruptcy case of the retailer H.H. Gregg. And the fight is about who has the superior interest in appliances that Whirlpool sold to H.H. Gregg, Whirlpool or Wells Fargo. Prior to the bankruptcy filing, Whirlpool sold appliances to H.H. Gregg on credit in the normal course of its business. Upon learning of the bankruptcy, Whirlpool sent its reclamation demand to H.H. Gregg. Now, reclamation is a state law right under the Uniform Commercial Code. It's a right to take back the goods that Whirlpool delivered prior to the bankruptcy. Reclamation protects suppliers like Whirlpool against their insolvent customers like H.H. Gregg. Wells Fargo was part of a bank group that made loans to H.H. Gregg prior to the bankruptcy. Those loans were secured by an interest in the inventory of H.H. Gregg, including the Whirlpool goods. Wells Fargo was also part of a different bank group that made loans to H.H. Gregg after the bankruptcy was filed, post-petition. Has any court held that a reclamation right, as you argue in your brief, springs into existence upon the delivery of goods? I understand the argument you've made here, kind of arising out of some of the purposes, the kind of purpose-based argument that you set forth in your brief, but is there any court that has held that? Well, I think that it is implied certainly in the, excuse me, you're asking about the springing of the reclamation? Yeah, upon the delivery of the inventory. Here are the appliances. I mean, you argue it, you make that point on page 13 and then at the bottom of page 22, and I totally understand what you're saying. You're making arguments about 2702 and some of the purposes there. But when you reach conclusions, there's not citations to case authority, and so my question is, it's just narrow, and that is, is there any case law out there? There's a lot of 2702 case law. There is a lot of 2702 case law, and the 2702 case law focuses on the fact of when the reclamation claim arises from the standpoint that it's about rescission, reclamation is like rescission. It is about voidable title when the goods were received, that title becoming void. That's Telemart and Teltronics. Both of those cases talk about the actual effect of 2702. And also, in the Dalen case, the lien creditor could not avoid a retroactive reversion of title to the reclaiming seller. So those cases all talk about the point in time when the reclamation claim rights actually arise, which is clearly what one of the issues is that we're dealing with here. So from our perspective, it is first there's the pre-petition liens of the Wells Fargo pre-petition bank group. Those were paid off. Once you don't have a debt anymore, you don't have a lien anymore. What came next? Well, the next thing that happened was that Whirlpool goods were delivered. They were delivered, but there was a voidable title situation here because of the reclamation rights that the Uniform Commercial Code 2702 gives to a seller like Whirlpool. So those reclamation rights are next. They happen upon the delivery of those goods. Now, notice is given later because if you knew when you were delivering the goods that you had an insolvent purchaser, then as a seller, you could exercise a different right. You could stop the goods in transit. There's two different rights that you have as a seller selling to insolvent buyers of your goods. If you haven't stopped the goods in transit, then you have the right to reclaim them. But again, we're talking about voidable title. It's as if a fraud occurred by the buyer who is effectively fraudulently indicating that they're going to be able to and will, in effect, pay for those goods. The situation here, though, is quite different. You've got dip, roll-up financing, and you're arguing that in that metaphysical moment in time where the pre-petition debt was paid off and the post-petition debt would have come into existence, that the reclamation rights sprung up in that sort of metaphysical second. Well, yeah, you could talk about the metaphysical second, or you could talk about the fact also that the post-petition dip lien, debtor-in-possession lien rights, did not actually become effective until at least a day after the bankruptcy. Ms. Smith, why is this case not governed by Section 364E, based upon the assurances that the bankruptcy judge provided in the interim debtor-in-possession financing order? Well, I think 364E isn't applicable here because 364E talks about appeal of the financing order. We're not in a situation where we're appealing the financing order, and we're not appealing... No, but you're challenging, though, the grant of priority given in that order, correct? Correct. Now, there's an argument that maybe you should have appealed earlier, okay? But given that those were the conditions and assurances that the bankruptcy court gave to the debtor-in-possession lenders, maybe the judge should, maybe he shouldn't have, I'm not sure. But given that he did, I don't see how 364E lets us pull the rug out from underneath him. Well, there was the interim order, and then there was the final order, which included the reservation of rights and the very important notwithstanding language. And then that talks about when the liens were in effect. And the liens are in effect, but they're subject in effect as of the date of the entry of the interim order, but they are subject to the language in the court's final order, which included the notwithstanding language saying notwithstanding anything else in this order, these reclamation rights are preserved. And arguments against them are preserved. And then paragraph 48 says, And then in paragraph 49, which comes right after that, it says, notwithstanding anything else in this order, notwithstanding anything else, these rights are reserved. And that's the way that the bankruptcy… The problem I have with this bizarre contradiction within 48 and 49 in the final order is that the money changed hands based upon the interim order, right? Right. So that's why I'm worried about 364E. Sure. So the money changed hands on the interim order. Petition is filed on March 6th. Interim order and liens are granted on March 7th to the debtor and possession lender. By the 10th, three days later, Whirlpool has already sent its reclamation claim. So within three days, the debtor is aware that there is a reclamation claim in play here regarding who's going to have rights to the Whirlpool goods. Then Whirlpool also objects to the entry of the final dip order. They do that by March 28th, which, by the way, they put off for a couple of days at the request of Wells Fargo, right, before they filed their objection, once again saying, we are asserting our rights to reclamation in the Whirlpool goods previously delivered. But the bankruptcy court's interim debtor and possession financing order was issued before that. It was. It was, Your Honor. So the whole question concerns priority. It does. If your reclamation request wasn't perfected before the interim order was entered, then the lenders have priority. Well, and there's two different ways that Whirlpool believes it still can succeed here. One of them is because Whirlpool's position is that its rights, it gave a notification when it gave a notification, but that its rights actually arose at the time that the reclaimed goods were actually delivered. All right? So that's one reason why. about authority for an inchoate reclamation right to exist in that form and be enforceable. Sure. There isn't authority for that, is there? Well, I think there is an assumption in the integrated transaction cases, the Dana case, the Dairy Mart case, that we don't agree with, but there's an assumption even there that that must be why the courts in those cases felt that they had to connect up the pre-petition and the post-petition lien rights, because something must have happened in between. All right? So in Reichhold, for example, in the Reichhold case, we have the same set of facts here as we have here from the standpoint of the timeline. There's the filing. There's an interim dip order. There's a reclamation demand. And there is a final order. That's the same set of circumstances that we have here. And in the Reichhold case, as we're asking the court to do here, that bankruptcy court has said those reclamation rights came ahead of the dip lenders' lien rights in the same goods. Right, but this bankruptcy court held that that integrated transaction doctrine is wholly invented. They did. Yeah, that is what the bankruptcy judge in this case said and then seemed to sort of apply it later on in the case anyway. Well, I don't really read it that way. He was hooking up, I think, the two different liens in that decision. So we do have the issue of the timeline, but we also have the issue of the courts below simply writing out and eliminating the state court rights of reclamation that Whirlpool believes that it has. So its rights of reclamation arise under the Uniform Commercial Code 2702, under state law, Indiana state law. They're imported into the bankruptcy code under Section 546C. Now, 546C doesn't craft new rights. It doesn't create a federal reclamation rights. All it does is take whatever the state rights are and allow them to be enforced in bankruptcy. In fact, it gives the reclaiming creditor a little extra time to make the claim, so it expands those reclamation rights from the standpoint of the notice provisions and the timing. But it doesn't eliminate the look back at state law. It doesn't say that reclamation claim rights are subject to the lien, subject to a prior lien. That's actually what it exactly says. No, it says it's subject to the prior rights. It's subject to the prior rights of a lien holder. We have to determine what are the rights of the lien holder. Where do we look to determine what the rights of the lien holder are? We look to state court. Now, if we're looking at reclamation, we know that under state court reclamation law, reclamation is subject to the rights of good faith purchasers, or purchasers, buyers in the ordinary course of business, and good faith purchasers. And that in the past, in some states, good faith purchasers included secured lenders. In some cases, it didn't. The Seventh Circuit in the reliable case here said, well, we're not, you know, we don't have to decide that. We don't know, does it or doesn't it? We don't have to decide. But in this case, we would say that you do have to look, even under 546 reference to the prior rights of an existing lien holder, you have to look at what those prior rights are. That's right. Suppose you're right. Suppose we look. Is it essential to your position that we conclude that the dip liens were not effective at the petition date? It is not. And why not? Because we still have our good faith arguments that we were never allowed to make, that were never even considered by the lower courts here. We can win either way, either under the timing argument, or because 546C incorporates state law, and we get to go back and take a look at whether Wells Fargo actually proceeded in good faith. Wasn't the time to raise good faith with dip financing as part of a 364 appeal or objection? It was reserved when we resolved the objection, Your Honor, to the dip financing order by saying notwithstanding anything else in this order, notwithstanding the findings, notwithstanding the court determinations, notwithstanding anything else in this order, the reclamation rights are preserved. I'd like to keep just a little time for rebuttal.  Thank you. Mr. O'Keefe. Thank you. Good morning, and may it please the court. My name is Kevin O'Keefe. I represent the secured lender Wells Fargo in this appeal. Before I respond to the arguments raised by Ms. Smith, I would like to reiterate three simple facts and one indisputable point of law that the lower courts relied upon to dismiss Whirlpool's claims. First, Wells Fargo, as the pre-petition lender, had a secure lien on the Whirlpool inventory dating back to 2011 at the latest. Second, pursuant to the final and unappealable dip orders, Wells Fargo and GACP, as the post-petition lenders, had enforceable security interests in the Whirlpool inventory effective as of the petition date or in any event no later than the following day. Third, Whirlpool issued its demand to HH Gregg to reclaim inventory on March 10th, four days after the security interests of Wells Fargo and GACP attached to the inventory. So as to the law, the Bankruptcy Code specifically addresses the priority of reclamation claims. Section 546 states that the rights of a seller to reclaim are subject to the prior rights of a holder of a security interest in such goods. The application of the law to these facts is therefore straightforward. The secured lenders are first in time and first in priority. Whirlpool's reclamation claim is subject to the prior rights of the dip lenders as the holders of the security interests in Whirlpool's goods and inventory. The Bankruptcy Court and the District Court duly recognize that Section 546C therefore compels dismissal of Whirlpool's reclamation claim as applied to the secured lenders. There is no need to examine this issue further in order to affirm. What role does 364E play in this? There's two specific points I would raise in regard to 364E. Number one, the notion that the Bankruptcy Court and the District Court disregarded the concept of good faith by making their rulings is actually belied by the fact that under 364E, good faith is required in order to ensure that the dip lenders are protected by immediately funding the reorganization of the debtors' estate. And second, I think it is quite correct that there's not much that can be offered at this point now that the dip orders are final and the time to appeal them has run. There's no basis to look back and eliminate the priority that was granted, the super priority that was granted to dip lenders. In the final order, though, you all agreed to this notwithstanding language in paragraph 49, which would seem to preserve whatever rights may have existed at that point. That's why I've asked about the interim dip order. But one of my concerns on this also is that under 364 for debtor in possession financing, it says the court after notice in a hearing may authorize this sort of lending and only if, among other things, there is adequate protection of the interest of the holder of the lien on the property for which senior or equal lien is proposed to be granted. I don't know how Whirlpool was supposed to have a fair opportunity to be heard before the dip lending was approved. Well, in that case, Your Honor, I think there's two issues there. Number one, the priority, the actual liens that were in place on the petition date were owned by Wells Fargo as the pre-petition secure lender. Right, but that was a different set of consortium, right? I mean, does your argument depend upon some kind of identity of pre-petition and post-petition lenders? It doesn't, Your Honor. I don't think so. No, the pre-petition lien is important for the purposes of applying 364 because the dip liens were granted super priority over this pre-petition lien, and as adequate protection for that, the pre-petition lenders would receive the funding, a portion of the dip liens upon entry of the final dip. So it's the roll-up of the pre-petition secured liens that's supposed to give Whirlpool the adequate protection? Well, no, no. My point is there, Your Honor, that Whirlpool was not entitled to adequate protection. There was no lien. Whirlpool had an amount passed due, and I think this is really a fundamental problem with Whirlpool's claims. These issues were decided months ago when Whirlpool made the business decision to deliver inventory to the debtors on an unsecured basis with 15-day invoices. Whirlpool did not seek a consignment. They did not seek cash on delivery. They did not attempt to negotiate with Wells Fargo as the pre-petition lender agent to assure some priority with respect to any potential reclamation claim. Whirlpool sold into or delivered goods to the debtors on the footing of Wells Fargo's pre-petition lien. So in that respect, these relationships were settled well beforehand. And this notion, which, again, is completely unsupported in the law, that Whirlpool's reclamation claim creates a lien that springs back to some indeterminate period of time, it's simply unsupported. This court has stated, and many other courts have stated, that the reclamation demand is effective or the reclamation claim is effective at the time the demand is made. Not the petition date, not when a reclamation complaint is filed. It's when the demand is made. And that, I think, is reflected in this court's reasoning in the Grady Foundry's case where, again, a utility attempted to use the same theory whereby delivery of a bill would have created a lien that they could then relate back to post-petition. The issue with that is that the delivery of a bill only creates an open account. It doesn't attach to a specific property. So this idea that the delivery of inventory creates a security interest that need only be perfected is just not supportive because, at the very least, Wells Fargo, as the pre-petition agent, already had a superiority or security interest in those goods. Mr. O'Keefe, I have two questions for you. I'd like you to respond to your adversary makes an argument in their reply brief that I know you're familiar with about language in the final dip order being negotiated to preserve this reclamation demand. What's your reaction to that? I would like to actually look at the specific language of this objection and the final dip order. So at the record, page 745. You're talking about paragraph 49? Yeah, it's on page 10 of the reply brief. Yes, yeah. I was looking back to the limited objection that was filed, but the final dip order, it's the same language. Paragraph 49, and this is subparagraph 2. Nothing herein shall impair, extinguish, subordinate, or prime any party's rights under 2702 of the UCC, subject, however, to Section 546C of the Bankruptcy Code and the dip secured party's rights and entitlements under the dip order or the interim dip order, excuse me. So this reservation of rights, I think, as it must for Whirlpool's case, does a lot of work. It, number one, supposedly forecloses all these findings of good faith. It, number two, does away with the specific order in paragraph 48 that said no, reclamation claims will not prime the dip liens. It supposedly includes reclamation claims within permitted prior liens, which are defined specifically to exclude reclamation claims. This general reservation of rights, what I think it actually intends to do is to preserve Whirlpool's administrative expense claims, which are still pending before the Bankruptcy Court. I think this... But then you're going to emphasize, I think, the last few words of it, subject to 546. Correct. And you say that just circles us right back to where we were before. Yes, and we have a prior secured lien from Wells Fargo as the pre-petition lender, a prior secured lien from Wells Fargo and GACP as the post-petition lenders, and then a later in time reclamation demand. Is it important in your view that we reach any conclusion on when the dip liens were effective? No, Your Honor. Under, I think, any of the theories advanced by Whirlpool, it would not have an effect on the outcome. I think what's critical here is that not only was the interim dip order prior in time to the reclamation demand, the dip financing was granted pursuant to Section 364, which primed the pre-petition liens, which Whirlpool has now conceded are superior to their reclamation claim. The reason I ask you the question, which I'm sure you get, is the only possibility I see of it being significant is if you could somehow conclude that the reclamation right kicked into existence as of the petition date because of the delivery of the inventory. At that point, I can't conceive of any other significance to it than that. I think you refer to this as sort of the metaphysical space. They argue that it sprung up upon the delivery of the inventory, that kind of right, and I understand why they're making that point. Right. It's just, well, number one, it's unsupported in the law, and number two, there's a critical distinguishing fact here, which we have raised in the briefs and I'll raise again. The Reichhold case of the Bankruptcy Court of Delaware, which has some reasoning which seems to support their argument, there's a critical factual distinction in that the pre-petition debt was rolled up immediately after the petition was filed. Here, the reclamation demand was issued on March 10th. At that point, the pre-petition lien and the post-petition lien by operation of the interim dip order were in effect. So as the Bankruptcy Court in this case correctly noted, at no point were the goods free from a floating lien. There was no window in time. Correct. All right. Turning back to the dip lien issue. Finally, one final point on the lien gap theory. There really is no conflict in the case law. What Whirlpool has sort of posited as a split in authority is really illusory because in none of those four cases, and I'm referring here to Farmer, Reichhold, Dairy Mart, and Dana, in none of those cases did a reclaiming vendor seek to obtain payment ahead of a pre- or a post-petition dip lender. It's simply not supported in any of those facts. And for that point alone, all of this notion that there's some split in competing theories is simply an opposite. What those cases really deal with is the effect of a prior secured party's lien on the inventory on the subsequent administrative expense claims that the vendor is seeking against the estate. And again, that claim is not part of this appeal. Finally, turn briefly to the good faith argument. Again, we need only look to Section 546C. The provision is unequivocal in stating that any state law reclamation claim asserted against the debtors is subject to the prior rights of a holder of a security interest. It does not say subject to the prior rights of a secured party acting in good faith or subject to the prior rights of a secured party unless such secured party acted in bad faith. The lower courts did not misapprehend Whirlpool's argument. They simply looked at the law and applied it to the facts of this case. What Whirlpool has posited is sort of an ignorance or a disregard of state law is actually not quite accurate. Their theory is lodged on the fact that under Article 2, it's arguable that Wells Fargo may need to offer proof that it was a good faith purchaser. What really Section 546C does is give effect to Article 9 concerning secured creditors as well as the bankruptcy code, Section 364, which allows courts to grant priming super priority liens over existing ones or unsecured assets. To the extent that there was any legal question as to whether a secured creditor could take priority, excuse me, whether a reclaiming vendor could take priority over a secured creditor, the 2005 amendment to the bankruptcy code, which added the prior rights of a holder of a security interest language, resolved this matter entirely. And then even if good faith was required, we have the final dip order and the interim dip order with explicit findings of good faith. Those orders are not appealable at this point. There's no basis to undertake a collateral attack on those findings. Mr. O'Keefe, could I ask you, I'm trying to understand why the bankruptcy judge thought he needed to convert your motion to one for summary judgment based on taking judicial notice of his own orders. As you'll see in the bankruptcy court's order, and as he stated in our status conference before doing this, he believed it was out of an abundance of caution because the bankruptcy court's dip orders were in a separate docket number and essentially a separate proceeding than the actual whirlpool adversary proceeding. And also that the dip orders, or at least the final dip orders, were entered after the complaint was filed and therefore were not reflected in the allegations. I take it you all thought that was an unnecessary precaution. We did, but you know, I think I don't want to argue with him at this point. I understand. Okay. Okay. Thank you. Unless the court has any further questions, we'll rest in our brief and request the permits. Thank you. Thank you. Thank you. Ms. Smith. Thank you. The interpretation that Wells Fargo provides for the notwithstanding language in the final dip order would seem to write out the notwithstanding language entirely. So I just want the court to contemplate that as they determine what the notwithstanding means. Also I want to point out in connection with the interim order, both of the interim and the final dip orders make the pre-petition lien subject to challenge proceedings. And they make the challenge proceedings must be filed within a certain period of time. And the adversary proceeding that was filed here by Whirlpool was filed within the challenge period, challenging the good faith nature of Wells Fargo, the underlying basis for the prior rights of a lien holder to be determined and defined. But Whirlpool never got that far. It didn't get the opportunity to make its arguments about good faith in this challenge to the pre-petition and the post-petition behavior of Wells Fargo. That's what we're asking this court to allow, to reverse the decisions that have been made below and to allow, rather than simply a legal determination that the bankruptcy code simply eliminates rights under state law, which is where the reclamation rights arise from, to eliminate our ability to go back and try those in the adversary proceeding that comes before you today. All right. Thank you. Our thanks to all counsel. The case is taken under advisement.